UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

VINCENT T. DEFARIA,

                      Plaintiff,                      **OPINION AND ORDER**

             -against-                          22-cv-1859 (AEK)

TINA COLEMAN, *guardian for Ralf H. Coleman,
an incapacitated person,* and
WESTERN EXPRESS, INC.,

                      Defendants.
------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

       Plaintiff Vincent T. Defaria brings this action against Defendants Tina Coleman, guardian for Ralf H. Coleman, an incapacitated person ("Coleman"), and Western Express, Inc. ("Western Express"), asserting claims of negligence / vicarious liability, and negligent hiring, retention, and supervision. *See* ECF No. 46 ("Amended Complaint" or "Am. Compl."). Currently before the Court is Western Express's motion for summary judgment. ECF No. 61. For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

### I. Factual Background

       The following facts relevant to the Court's decision are undisputed and are taken from Western Express's Local Civil Rule 56.1 Statement, ECF No. 62 ("Def.'s 56.1"), Plaintiff's Response to Defendant's Statement of Material Facts and Statement of Additional Facts, ECF No. 67 ("Pl.'s 56.1"), and the evidence submitted in connection with the motion.

       On June 30, 2021, Plaintiff was working on the southbound side of Interstate 95 as an attenuator driver, responsible for operating an attenuator truck that would direct oncoming traffic

when roadwork was being performed.  Pl.'s 56.1 ¶¶ 1-2; *see*, *e.g.*, ECF No. 64 ("Raven Decl.") Ex. E at 4-8 ("Police Accident Report").[1] (accident occurred on June 30, 2021).[2]  On that date, work was being performed on the southbound side of Interstate 95 underneath the bridge near the exit for Interstate 287.  Pl.'s 56.1 ¶ 3.  Plaintiff parked his truck on the right shoulder of Interstate 95, and the illuminated arrow on the back of his truck was directing traffic to the left.  *Id.* ¶ 4.  Immediately prior to the accident, Plaintiff exited his truck on the passenger side to inspect the right side of his truck and his passenger sidelight, and to fix the mirrors.  *Id.* ¶ 5.  While Plaintiff was standing outside his truck on the top stair of the truck ladder adjusting the mirror on the passenger side, his truck was hit by another truck, which was being operated by Coleman.  *Id.* ¶¶ 6-7; *see* Police Accident Report.  Plaintiff landed on his right side, approximately five steps away from his truck, between the truck and the highway barricade.  Pl.'s 56.1 ¶ 7.

Coleman was hired by Western Express in June 2021.  Raven Decl. Ex. L ("Easterday Dep.") at 29:10-16; *see* Raven Decl. Ex. K ("T. Coleman Dep.") at 28:18-23; ECF No. 49 ¶ 13 (admitting that on or about June 30, 2021, Coleman was employed by Western Express).  Prior to being hired, Coleman was required to undergo a medical examination with an independent medical professional registered with the United States Department of Transportation ("DOT") national registry.  Easterday Dep. at 31:25-32:12.  Dr. Jason Bollenbaugh, a licensed chiropractor and certified DOT examiner, examined Coleman on June 7, 2021.  Pl.'s 56.1 ¶¶ 10-11; *see*

---

[1] Page citations to the Police Accident Report, as well as to Raven Declaration Exhibit V ("Coleman Employment File") and Raven Declaration Exhibit W ("Christus Good Shepherd Records"), are to the page numbers in the headers generated by the Court's electronic case filing system.

[2] Both parties incorrectly state in their Local Civil Rule 56.1 statements that the accident occurred on June 13, 2021.  It is clear, however, from the Police Accident Report that the accident occurred on June 30, 2021.

Raven Decl. Ex. U ("Medical Examination Report Form").  When conducting a DOT physical examination, Dr. Bollenbaugh reviews the individual's health history, medications, surgery background, height, weight, vision, blood pressure, pulse, hearing, peripheral vision, basic orthopedic tests, strength, and coordination.  ECF No. 70 ("Bollenbaugh Dep.") at 28:6-16.  On the portion of the Medical Examination Report Form that Coleman completed on June 7, 2021, Coleman denied having a history of "[s]eizures, epilepsy," "[f]ainting or passing out," or "[s]troke, mini-stroke (TIA), paralysis, or weakness."  Medical Examination Report Form at 2.  The only health condition Coleman acknowledged having was high blood pressure.  *Id.*  Coleman certified that the information he provided was "accurate and complete."  *Id.*  Dr. Bollenbaugh noted on the Medical Examination Report Form that Coleman denied a history of diabetes, seizures, cardiac disease, or sleep apnea.  *Id.*; *see* Bollenbaugh Dep. at 90:12-91:4.[3]

During the physical examination, Dr. Bollenbaugh took Coleman's blood pressure twice; the first reading was 178/105, and the second reading was 164/102.  Medical Examination Report Form at 3; *see* Pl.'s 56.1 ¶ 20.  Both of these are considered to be high blood pressure readings, and signified, according to Dr. Bollenbaugh, that Coleman was "in stage two hypertension"; stage three hypertension is "[a]nything above 180."  Bollenbaugh Dep. at 80:10-81:7; *see* Pl.'s 56.1 ¶ 22.  Even in light of these findings, consistent with the medical guidelines

---

[3] Dr. Bollenbaugh testified at his deposition that

> [o]n question 2, [Coleman] marked "No" to "Do you have or have you ever had a seizure or epilepsy?"  He marked "No."  Then in my notes, I would have verbally also asked him.  "Driver denies a history of diabetes, seizures, cardiac disease or sleep apnea."  So I would have also verbally asked him that question, and he would have denied it.

Bollenbaugh Dep. at 90:16-24.  When asked whether there would have been a notation in the report had Coleman mentioned any of these conditions, Dr. Bollenbaugh responded, "Correct." *Id.* at 90:25-91:4.

3

issued by the Federal Motor Carrier Safety Administration ("FMCSA"), Dr. Bollenbaugh gave Coleman a three-month medical certificate, which authorized him to drive for a period of three months. Medical Examination Report Form at 4; Pl.'s 56.1 ¶ 21. Dr. Bollenbuagh's determination on the last page of the Medical Examination Report Form indicated that Coleman required "periodic monitoring" for his hypertension. Medical Examination Report Form at 4.

Unbeknownst to Dr. Bollenbuagh, Coleman suffered an episode of "blacking out" on February 20, 2021, approximately four months prior to his June 7, 2021 examination and the June 30, 2021 accident. Pl.'s 56.1 ¶ 9; *see* T. Coleman Dep. at 31:24-37:9; Christus Good Shepherd Records at 4. Coleman received medical treatment, but he returned to work the next day. Pl.'s 56.1 ¶ 9. Coleman's wife, Tina, was not sure whether her husband reported the incident to his then-employer.[4] *Id.*; *see* T. Coleman Dep. at 37:10-12. Medical records from the hospital to which Coleman was transported on February 20, 2021 note that Coleman was diagnosed with seizure-like activity, and a CT scan of his brain taken that day evidenced what a radiologist described as "probably" an old lacunar infarct or injury.[5] *See* Christus Good Shepherd Records at 4, 6, 43. During that hospitalization, Coleman denied that he had experienced any previous seizures. *Id.* at 4, 5. The doctor discussed the imaging results with

---

[4] Coleman's complete employment file, which was obtained by Western Express at or around the time Coleman was hired by Western Express, notes that he was unemployed from December 2020 to May 2021. *See* Coleman Employment File, Part 2 at 34. But the medical records from the February 20, 2021 hospital visit indicate that Coleman's employer at the time was JB Transportation. *See* Christus Good Shepherd Records at 3.

[5] "A lacunar stroke (lacunar infarct) is a stroke that happens when a blood clot blocks one of the small blood vessels deep in your brain." *Lacunar Stroke (Lacunar Infarct)*, https://my.clevelandclinic.org/health/diseases/lacunar-stroke [https://perma.cc/BTD6-Q2MR] (last visited 3/24/2025).

Coleman, and noted that Coleman "was unaware that he had a prior stroke"; the doctor also discussed "the importance of follow-up for this and the risk for future strokes." *Id.* at 6.

## II.     Procedural History

This action was initially filed in New York state court on February 9, 2022, and was removed to this Court on March 4, 2022. *See* ECF No. 1. Plaintiff filed the Amended Complaint on August 14, 2023. ECF No. 46. In accordance with the briefing schedule set by the Court on March 1, 2024, Western Express filed its motion for summary judgment on May 17, 2024, ECF Nos. 61-64; Plaintiff filed his opposition to the motion on July 17, 2024, ECF Nos. 65-68; and Western Express filed its reply on August 12, 2024. ECF No. 69.[6]

## LEGAL STANDARDS FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 320-23 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, a court is required to "resolv[e] all record ambiguities and draw[] all factual inferences in favor of the non-moving party." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 145 (2d Cir. 2007); *see also Anderson*, 477 U.S. at 261 n.2; *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002). A party cannot overcome summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts" because "conclusory

---

[6] Additional filings on February 19 and February 20, 2025 were submitted for the limited purpose of correcting errors with certain of the previously filed exhibits.

5

allegations or denials" cannot "create" genuine disputes of material fact "where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation marks omitted). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255; *accord Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 76 (2d Cir. 2023). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 975 (2d Cir. 1992) (citing *H.L. Hayden Co. v. Siemens Med. Sys. Inc.*, 879 F.2d 1005, 1011 (2d Cir. 1989)).

## DISCUSSION

### I.     Vicarious / Respondeat Superior Liability

Plaintiff alleges that "the negligence of the Defendant, WESTERN EXPRESS, INC., consisted of, but [was] not limited to, vicarious liability through the acts of Defendant, RALF H. COLEMAN, under the doctrine of Respondeat Superior." Am. Compl. ¶ 20.

Where, as here, an action is before the Court because of the Court's diversity jurisdiction and involves an accident that occurred in New York, New York law applies. *See Torres v. Mamadou*, No. 19-cv-6973 (SLC), 2021 WL 3682906, at *4 (S.D.N.Y. Aug. 19, 2021). Under New York law, "[t]he doctrine of respondeat superior renders an employer vicariously liable for torts committed by an employee acting within the scope of the employment." *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (1999). "Pursuant to this doctrine, the employer may be liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment." *Id.*

Western Express attempts to narrow the vicarious liability analysis by arguing that the only proximate cause of the accident was not anything having to do with Coleman's operation of

his truck on June 30, 2021, but rather Coleman's failure to disclose the February 2021 episode that led to his hospitalization, and potential past history of stroke, during his independent DOT physical examination. *See* ECF No. 63 ("Def.'s Mem.") ¶ 54. Had Coleman responded truthfully and accurately to the questions on the Medical Examination Report Form or to Dr. Bollenbaugh's questioning during his examination, Western Express effectively contends, Coleman never would have been certified to drive and never would have been hired by Western Express, and therefore the accident would not have happened. *See id.* ¶¶ 5, 13, 37, 49.[7] But while Western Express's undisputed compliance with the Federal Motor Carrier Safety Regulations ("FMCSRs"), Pl.'s 56.1 ¶¶ 46, 49, 55, 63, 64, 70, is of critical relevance in connection with Plaintiff's direct claim against Western Express for negligent hiring, *see* Section II.A, *infra*, it is not sufficient to resolve Plaintiff's vicarious liability / respondeat superior claim, because the Court must consider another proximate cause of the accident—specifically, what

---

[7] The Court notes that there is some ambiguity in the record as to what would have happened had Coleman more thoroughly disclosed his medical history. Dr. Bollenbaugh was asked at his deposition about what he would have done if Coleman had told him during the medical examination about the February 2021 incident that led to his hospitalization. When asked whether he would have certified Coleman if he had known this information, Dr. Bollenbaugh responded, "I would have to get more information to see what the cause and the diagnosis and the reason for the seizure. I mean, there's different types and reasons for having a seizure. I'd see if the driver's also on any medications for seizure disorders." Bollenbaugh Dep. at 91:5-14. In response to a question about whether a single incident of a seizure would automatically disqualify a driver, Dr. Bollenbaugh testified that "in most cases, it's usually not a good thing, and they're probably not going to be driving. But there are different causes of seizures, and I would certainly ask for records and diagnosis and medications and any other medical information to make a determination. I wouldn't just automatically disqualify somebody until I knew the exact reason." *Id.* at 91:24-92:8.

Meanwhile, Western Express's expert Kevin Galbreath—not a physician, but a "transportation safety consultant," *see* Raven Decl. Ex. Q ¶ 1—testified at his deposition that if Coleman had noted on the Medical Examination Report Form that he had suffered a seizure four months earlier, Coleman would not have been medically certified, "[b]ecause if you had a history of a seizure, then you're not qualified to operate a commercial motor vehicle," Raven Decl. Ex. O ("Galbreath Dep.") at 45:14-22.

happened when Coleman was operating his vehicle on the southbound side of Interstate 95 on June 30, 2021. Notably, Western Express has not argued—nor could it—that Coleman's operation of the vehicle on June 30, 2021 was outside the scope of his employment.

As to the day of the accident itself, Western Express insists that the accident was not the result of negligence by Coleman, but rather the result of a sudden medical emergency, and that Western Express could not have foreseen that emergency due to Coleman's nondisclosure of his medical history. Def.'s Mem. ¶ 54. In contrast, Plaintiff maintains that separate and apart from any failure by Coleman to disclose his medical history during the independent medical examination process, his sudden medical emergency on June 30, 2021 was foreseeable based on his stage two hypertension and other related findings—information that *was* known to Coleman and to Western Express at the time it hired Coleman. ECF No. 66 ("Opp. Mem.") at 11. Specifically, Plaintiff argues that "based upon the medical information within Western Express'[s] possession, including Mr. Coleman's history of hypertension, Dr. Bollenbaugh's two findings of high blood pressure during his evaluation, and Dr. Bollenbaugh's notation on the medical certificate that Mr. Coleman required 'periodic monitoring' due to his hypertension"—

there is a material question of fact as to whether it was foreseeable that Coleman would suffer a hypertension related stroke while operating a Western Express truck.[8] *Id.*

"It is well settled that a driver who experiences a sudden medical emergency will not be chargeable with negligence provided that the medical emergency was unforeseen." *Wozniak v. DeMunda*, 204 A.D.3d 1495, 1496 (N.Y. App. Div. 2022) (4th Dep't) (cleaned up). "A defendant moving for summary judgment on the sudden medical emergency doctrine must establish the existence of the claimed medical emergency and its unforeseeable nature by competent or expert medical evidence." *Id.* (cleaned up). Here, there appears to be no dispute that the accident resulted from a medical emergency, namely, Coleman suffering a stroke. *See* Pl.'s 56.1 ¶ 74; Def.'s Mem. ¶ 1; Raven Decl. Ex. I ("Ryan Coleman Dep.") at 22:25-23:4 ("Q. Is it your understanding that later that night on June 30, 2021 your father suffered a stroke; is that correct?  A.  Yes, sir."); T. Coleman Dep. at 46:20-47:13 (the doctors at the hospital told Tina

---

[8] While the parties have focused their arguments on whether Coleman's sudden medical emergency was foreseeable to Western Express, New York appellate courts are split as to whether the foreseeability of a medical emergency to the owner of a vehicle or the employer of a driver is the appropriate question for consideration in the context of vicarious liability.  In *Marone v. Chaves*, 306 A.D.2d 372 (N.Y. App. Div. 2003) (2d Dep't), the Appellate Division, Second Department affirmed the denial of summary judgment as to a vehicle owner where the driver involved in the accident asserted the affirmative defense of medical emergency, finding that the vehicle owner's "contention that it could not have foreseen [the driver's] medical emergency because it had no notice of his seizure disorder is without merit given the vicarious nature of the liability imposed upon owners of vehicles by Vehicle and Traffic Law § 388." *Id.* at 373; *see also ABM Aviation v. Prince*, 884 S.E.2d 8, 12 n. 4 (Ct. App. Ga. 2023) ("Although the employer's knowledge would be relevant to a direct liability claim, such as for negligent entrustment, hiring, or retention, it is not relevant to a vicarious liability claim."). The court in *Marone*, however, noted the contrary authority of *State v. Susco*, 245 A.D.2d 854 (N.Y. App. Div. 1997) (3d Dep't). In that case, the Appellate Division, Third Department upheld the grant of summary judgment to the defendant employer, finding that the employer proved that the cause of the accident—which occurred when the employee suffered a fatal heart attack while operating a dump truck owned by the defendant—was unforeseeable because the defendant employer did not have notice of the employee's medical condition. *Id.* at 856. The parties here did not brief this issue, and the Court need not resolve the conflict in the case law for purposes of this motion, but it is a question that will have to be considered by the parties as the case progresses.

9

Coleman that her husband had a stroke); Police Accident Report at 4-5 (stating that "[d]ue to an illness," Coleman "lost control" of his vehicle and that Coleman "was transported to Greenwich Hospital with severe brain bleeding not caused from the accident but an outside medical illness").[9]

Yet Western Express has failed to present "competent or expert medical evidence" as to whether Coleman's sudden medical emergency on June 30, 2021 was, in fact, unforeseeable, based either on information that was known only to Coleman (and not disclosed to Western Express), or information that was known to Western Express. While there is some testimony in the record—albeit a recitation of hearsay from a lay witness, Tina Coleman—that purportedly links Coleman's stroke to his hypertension, *see* T. Coleman Dep. at 47:17-24, Plaintiff also has not presented competent or expert medical evidence to support his theory as to why the medical emergency that led to the accident actually was foreseeable. Simply put, there is insufficient evidence for the Court to determine as a matter of law whether the medical emergency experienced by Coleman, while he was operating his vehicle within the scope of his employment with Western Express, was foreseeable or not. Because there are issues of fact as to the foreseeability of Coleman's medical emergency, Western Express is not entitled to summary judgment on Plaintiff's claim for vicarious / respondeat superior liability, and its motion as to that claim is DENIED.

## II.     Negligent Hiring, Retention, and Supervision

Plaintiff alleges that Western Express's negligence "consisted of, but [was] not limited to, the negligent hiring, training and retention" of Coleman. Am. Compl. ¶ 24. The Amended

---

[9] Despite the parties' agreement that Coleman suffered a stroke, no medical evidence of Coleman's stroke has been provided in connection with this motion.

Complaint does not include any distinct factual allegations in support of this claim, and the claim, as pled, does not even mention negligent supervision. The parties have nonetheless litigated as though there are claims for negligent hiring, retention, and supervision, and the Court therefore addresses each of these three claims.[10]

"To state a claim for negligent hiring, . . . supervision or retention, 'in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels.'" *Azzarmi v. Neubauer*, No. 20-cv-9155 (KMK), 2024 WL 4275589, at *24 (S.D.N.Y. Sept. 24, 2024) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)), *reconsideration denied sub nom. Azzarmi v. Sedgwick Claims Mgmt. Servs., Inc.*, 2025 WL 35003 (S.D.N.Y. Jan. 6, 2025). "To prevail on such a claim, a plaintiff must establish, among other things, that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence." *Id.* (cleaned up). "A cause of action for negligent hiring or retention requires allegations that the employer failed to investigate a prospective employee notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate that prospective employee." *Id.* (cleaned up).

---

[10] Western Express did not offer any arguments in its motion papers about a purported claim for negligent training. This is understandable, because there is not a single allegation in the Amended Complaint about training, other than the boilerplate labeling of the cause of action in paragraph 24. Accordingly, and for purposes of this litigation going forward, the Court does not interpret the Amended Complaint to be asserting a claim for negligent training.

11

### A. Negligent Hiring

Plaintiff makes no argument in opposition to Western Express's motion with respect to his claim of negligent hiring. *See* Opp. Mem. at 14-17. Indeed, the undisputed evidence in the record demonstrates that Western Express hired Coleman in accordance with the FMCSRs; that there were no records from Coleman's prior employment that would indicate that he was not physically qualified to drive a commercial truck; and that Dr. Bollenbaugh properly medically certified Coleman. *See, e.g.*, Pl.'s 56.1 ¶¶ 46, 49, 55, 63, 64, 70. Even with the high blood pressure readings recorded by Dr. Bollenbaugh during his independent medical examination of Coleman, the FMCSRs allowed Coleman to be medically certified to drive a commercial truck for a three-month period before having his blood pressure checked again. *See* 49 C.F.R. § 391.41(b)(6) ("A person is physically qualified to drive a commercial motor vehicle if that person . . . [h]as no current clinical diagnosis of high blood pressure likely to interfere with his/her ability to operate a commercial motor vehicle safely"); 49 C.F.R. Pt. 391, App A, II.E.4.[11] Plaintiff makes no argument to the contrary, and the record is clear that Western Express took all necessary and appropriate steps before hiring Coleman to ensure that he was qualified and authorized to drive a Western Express vehicle. Accordingly, Western Express is

---

[11] As is relevant here, the Medical Advisory Criteria for 49 C.F.R. § 391.41(b)(6) state:

> A blood pressure of 160–179 systolic and/or 100–109 diastolic is considered Stage 2 hypertension. A blood pressure in this range is an absolute indication for antihypertensive drug therapy. The individual may be given a one-time certification of 3 months to initiate or adjust antihypertensive drug therapy and to reduce the blood pressure to less than or equal to 140/90. Provided treatment is well tolerated and the driver demonstrates a blood pressure value of 140/90 or less, the individual may be certified for 1 year.

49 C.F.R. Pt. 391, App A, II.E.4.

entitled to summary judgment on Plaintiff's claim of negligent hiring, and its motion as to this claim is GRANTED.

### B. Negligent Retention and Supervision

Plaintiff contends that there are "issues of fact as to whether Western Express adequately supervised Mr. Coleman in the three weeks between his obtaining a three month medical certificate and the date of the incident, which preclude summary judgment dismissing the negligent retention [and] supervision claim[s]." Opp. Mem. at 15. The Court agrees.

There is a material question of fact as to whether Western Express was obligated to take any additional actions to supervise Coleman during the period of time between the date he was hired and the date of the accident, in light of Dr. Bollenbaugh's notations on the Medical Examination Report Form. *See* Medical Examination Report Form at 4. Western Express acknowledges that it did not undertake any additional investigation, or take any steps to follow up with Coleman regarding his hypertension. *See* Easterday Dep. at 66:22-67:9. According to Plaintiff's expert V. Paul Herbert, an expert in the field of transportation regulatory compliance, "in accordance with the [FMCSRs] and the high standards of safety required within the transportation industry, Western Express had a pronounced obligation to meticulously understand and manage the medical history of its drivers, including Ralf H. Coleman." ECF No. 68-1 ("Herbert Report") at 9. Herbert further opined that "[w]hen Western Express, Inc. employed Mr. Coleman as a driver with known hypertension, a dangerous or high risk condition which rendered Mr. Coleman unfit at any given moment to safely operate their heavy vehicle, industry standards required Western Express put in place a process of continuous monitoring, specially tailored to the medical condition of Mr. Coleman in order to fulfill their responsibility to ensure that he was medically fit to operate their heavy vehicle." *Id.* at 18; *see also, e.g.*,

13

Raven Decl. Ex. P ("Herbert Dep.") at 106:14-17 (Western Express "should have discussed with [Coleman] their concern and how important it is for [Coleman] to get his blood pressure under control immediately"), 111:16-112:4 (Western Express has a responsibility to "[make] sure that that driver . . . has sufficient time off to take care of this dangerously high blood pressure before they dispatch him").

In contrast, Western Express's expert, Galbreath, disagrees with "the majority" of Herbert's opinions because, in Galbreath's view, they are "not based on regulation or industry standards." Raven Decl. Ex. T at Ex. B (Galbreath Rebuttal Report) at 6. Galbreath opined that Western Express was not even required to obtain a copy of Coleman's medical certification, *see* Raven Decl. Ex. S at Ex. B (First Supplemental Galbreath Report) at 3; that "motor carriers do not have the knowledge or expertise to evaluate a driver's health conditions," Galbreath Rebuttal Report at 3; and that the industry standard only required Western Express to adhere to the recommendations of the independent medical examiner and ensure that Coleman obtained a new medical examination before the expiration of his three-month certificate, *see id.* at 2, 5.

Summary judgment is not appropriate when there are "battle-of-the-experts" issues. *See, e.g., Pearlstein v. BlackBerry Ltd.*, No. 13-cv-7060 (CM) (KHP), 2022 WL 19792, at *9 (S.D.N.Y. Jan. 3, 2022). "[W]hen there are dueling experts, both of whom have put forward opinions in contradiction with each other, and when those opinions are important to resolution of a material factual dispute," summary judgment should not be granted. *Id.* (quotation marks omitted). Here, Herbert and Galbreath have offered contradicting opinions as to whether industry standards required Western Express to do more to supervise Coleman and monitor his hypertension during the time between his receipt of his three-month medical certification and the date of the accident. This dispute is not for the Court to resolve on summary judgment.

Accordingly, Western Express is not entitled to summary judgment on Plaintiff's claims of negligent retention and supervision, and its motion as to this claim is DENIED.

## CONCLUSION

For the reasons stated above, Western Express's motion for summary judgment (ECF No. 61) is GRANTED IN PART AND DENIED IN PART.  Western Express is GRANTED summary judgment on Plaintiff's claim of negligent hiring.  Western Express is DENIED summary judgment on Plaintiff's claim of vicarious / respondeat superior liability and Plaintiff's claims of negligent retention and supervision.

A video status conference to discuss the next steps in this matter is hereby scheduled for April 22, 2025 at 10:30 a.m.  Video links will be sent to all counsel in advance of the conference.  Members of the public who wish to attend the conference may do so by telephone by (1) dialing the meeting number: (855) 244-8681; (2) entering the access code: 231 250 35451; (3) pressing pound (#); and (4) pressing pound (#) again to join the teleconference as a guest.  Should the parties experience any technical issues with the teleconferencing system, please contact Chambers at (914) 390-4070.  At the conference, the parties must be prepared to discuss the schedule for any remaining discovery in the case and their interest in scheduling a settlement conference either with another magistrate judge or through a referral to the Court's Mediation Program.

Dated: March 24, 2025
      White Plains, New York

                                                  SO ORDERED.

                                                  *Andrew Krause*

                                                  _____
                                                  ANDREW E. KRAUSE
                                                  United States Magistrate Judge